**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

ROBERT COPHER ,

                Plaintiff,

vs.                                              Case No.  3:09-cv-520-J-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Robert Copher ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying his claim for disability insurance benefits and supplemental security income. His alleged inability to work is based on the impairments of degenerative disc disease; degenerative joint disease; cervical, dorsal, and lumbosacral strain/sprain; post-traumatic headaches; left cervical radiculopathy; bilateral lumbosacral radiculopathy; cervical herniation of nucleus pulposus; personality disorder; and post traumatic stress disorder ("PTSD"). Transcript of Administrative Proceedings (Doc. No. 13; "Tr.") at 71, 196, 209, 293. On December 24, 2003, Plaintiff filed an application for disability insurance benefits,[2] alleging an onset date of December 1, 2002. Tr. at 55; Plaintiff's

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge, see Consent to the Exercise of Jurisdiction by a United States Magistrate Judge (Doc. No. 21), and the Order of Reference was entered on November 24, 2009 (Doc. No. 22).

[2] The Application for Supplemental Security Income is "not available for inclusion" in the record. Tr. at 4D.

Memorandum of Law in Opposition to the Commissioner's Decision Denying Plaintiff Disability Insurance Benefits (Doc. No. 17; "Pl.'s Mem.") at 2; Memorandum in Support of the Commissioner's Decision (Doc. No. 18; "Def.'s Mem.") at 1-2.[3]

On May 7, 2005, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert ("VE") testified. Tr. at 250-86. On October 27, 2005, the ALJ issued a decision finding Plaintiff not disabled. Tr. at 18-24. On May 23, 2006, the Appeals Council denied Plaintiff's request for review. Tr. at 5-7. On July 20, 2006, Plaintiff commenced a previous action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1 in Case No. 3:06-cv-656-J-HTS) seeking judicial review of the Commissioner's final decision. On September 4, 2007, the case was remanded upon the Commissioner's Unopposed Motion for Entry of Judgment with Remand (Doc. No. 19 in Case No. 3:06-cv-656-J-HTS). See Order (Doc. No. 22 in Case No. 3:06-cv-656-J-HTS); Tr. at 313.

After remand, on August 31, 2007, the Appeals Council explained that the ALJ's October 27, 2005 decision did "not contain an adequate evaluation of the treating source opinions," and there was no current medical evidence. Tr. at 317. The Appeals Council directed the ALJ to obtain additional evidence, give additional consideration to Plaintiff's residual functional capacity ("RFC") after evaluating the physicians' opinions, and obtain supplemental evidence from a VE. Tr. at 317-18.

On March 18, 2008, the ALJ convened a second hearing. Tr. at 639-48. Upon Plaintiff's request to obtain additional evidence, the hearing was continued. Tr. at 643, 646-

---

[3] Apparently, Plaintiff filed subsequent applications, which were consolidated with the instant case. See Tr. at 291.

48. On January 21, 2009, a third hearing was convened by a different ALJ. Tr. at 649-736. During the third hearing, four witnesses testified: Bruce Witkind, M.D.;[4] Olin Hamrick, Jr., Ph.D.;[5] Plaintiff; and a VE. Tr. at 650. On April 1, 2009, the ALJ issued a second decision ("Decision") finding Plaintiff not disabled. Tr. at 290-308. On June 10, 2009, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision. Complaint at 1. The Commissioner states "Plaintiff timely pursued and exhausted his administrative remedies available before the defendant," and "[t]he final decision of the Commissioner finding Plaintiff has not met the statutory requirements for disability is now ripe for review and this court properly has jurisdiction . . . ." Def.'s Mem. at 2. Upon Plaintiff's request, see Pl.'s Mem. at 1, oral argument was heard before the undersigned on August 11, 2010. See Minute Entry (Doc. No. 25).

Plaintiff raises two issues: (1) "whether the ALJ committed error by rejecting [Plaintiff]'s treating physician's opinions"; and (2) "whether the ALJ committed error[ ]by not asking hypothetical questions to the vocational expert which include[d] all of [Plaintiff]'s impairments[ ]and by disregarding the vocational expert[']s responses to Plaintiff's counsel's questions." Pl.'s Mem. at 1 (capitalization omitted). After a thorough review of the entire

---

[4] Dr. Witkind testified without objection as a medical expert regarding Plaintiff's physical impairments. Tr. at 652-87.

[5] Dr. Hamrick testified as a medical expert regarding Plaintiff's mental impairments. Tr. at 688-709. Plaintiff objected to Dr. Hamrick's testimony because he was working at that time for the South Carolina state agency on a part-time basis as a psychological consultant with the Disability Determination office in South Carolina. Tr. at 688-89. The ALJ overruled Defendant's objection. Tr. at 689.

record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be affirmed for the reasons explained herein.

## II. The ALJ's Decision

When determining whether an individual is disabled,[6] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the plaintiff (1) is currently employed; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). Here, the ALJ followed the five-step sequential inquiry. Tr. at 293-308. At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since December 1, 2002, the alleged onset date." Tr. at 293. At step two, the ALJ found Plaintiff suffers from the following severe impairments: "a history of degenerative disc disease, history of degenerative joint disease, history of post-traumatic headaches and features of personality disorder." Tr. at 293. At step three, the ALJ ascertained Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. at 293.

---

[6] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

The ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform a "reduced range of medium work." Tr. at 296. The ALJ found as follows: Plaintiff is able to sit, stand, and walk for up to six hours in an eight-hour workday; Plaintiff can lift fifty pounds occasionally and twenty-five pounds or less "more frequently"; Plaintiff can "occasionally to frequently bend, crouch, crawl, kneel, stoop and climb stairs and ramps but is restricted from any rope, ladder, or scaffold climbing"; Plaintiff has no significant manipulative impairments; Plaintiff has no visual or communication deficits; Plaintiff has "no impairment in his ability to do simple or complex tasks, which includes and encompasses unskilled, semi-skilled and skilled forms of work and has a 'moderate' degree of limitation, but can still perform satisfactorily, in his ability to interact with the general public, supervisors and co-workers and to make routine changes in a normal work setting." Tr. at 296. At step four, the ALJ found that Plaintiff is able to perform his past relevant work. Tr. at 305. In addition, after considering Plaintiff's age, education, work experience, and RFC, the ALJ determined at step five that "there are [also other] jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." Tr. at 307. The ALJ concluded Plaintiff has not been under a disability from December 1, 2002 (the amended alleged onset date) through the date of the Decision. Tr. at 308.

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320,

1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

### A. Treating Physician

Plaintiff argues the ALJ "erred by rejecting the opinions of [M.W. Kilgore, II, M.D.], [Plaintiff]'s treating physician." Pl.'s Mem. at 5. Plaintiff asserts Dr. Kilgore "provided [Plaintiff] with medical treatment for almost 2 years, beginning July 4, 2003 through May 23, 2005." Pl.'s Mem. at 6.[7] Plaintiff contends the ALJ's Decision is "void of any adequate

---

[7] Dr. Kilgore also provided treatment to Plaintiff for neck and back pain in 1999-2000, Tr. at 461-81, which resolved prior to 2003. Tr. at 194. Treatment notes from the 1999-2000 time period predate the alleged onset date of December 1, 2002.

reasons explaining why he rejected Dr. Kilgore's opinion regarding [Plaintiff]'s limitations." Id. at 6.

After the alleged onset date, Dr. Kilgore treated Plaintiff for "continuous headache, with neck, interscapular and lumbosacral low back pain," "left upper extremity radiation of pain and tingling in his left hand," "bilateral buttock and lower extremity radiation," and "numbness in his feet." Tr. at 194. Plaintiff went to Dr. Kilgore complaining of these symptoms after a "toilet fell over as [Plaintiff] was sitting on it," and Plaintiff "fell over onto his right side . . . ." Tr. at 194. As a result of this accident, Plaintiff "sustained bruising to his right thigh and jerked his neck and back with exacerbation of continuous headache." Tr. at 194. After an examination on August 25, 2003, Dr. Kilgore stated that Plaintiff suffered from "[c]ervical, dorsal, and lumbosacral strain/sprain"; "[p]ost-traumatic headache"; "[l]eft cervical radiculopathy"; and "[b]ilateral lumbosacral radiculopathy." Tr. at 196. Treatment notes dated February 19, 2004 indicate Plaintiff should avoid bending, stooping, overhead work, and "pushing/pulling"; a box indicating "no work" is checked, but a box indicating "part-time" is circled. Tr. at 146. Also in the February 19, 2004 treatment notes, it is noted that Plaintiff is "seeking disability." Tr. at 146.

On May 23, 2005, Dr. Kilgore wrote a letter "To Whom It May Concern[.]" Tr. at 209. In the letter, Dr. Kilgore explained that he had been seeing Plaintiff "in excess of years for the following diagnoses[:] degenerative disc disease, chronic cervical, dorsal, and lumbar strain sprain, post-traumatic headaches, post-traumatic stress disorder, cervical herniation of the nucleus pulopsus." Tr. at 209. As of May 23, 2005, Plaintiff was being prescribed "Lorcet 10." Tr. at 209. Dr. Kilgore opined regarding Plaintiff's condition:

-7-

> As a result of [Plaintiff]'s headaches, he is totally incapacitated from working approximately 8-10 days per month. At those times, he is required to be confined to his residence which sometimes lasts in excess of 24 hours.

Tr. at 209.

The Regulations instruct ALJs how to weigh the medical opinions[8] of treating physicians[9] properly. See 20 C.F.R. § 404.1527(d). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering factors such as the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician. 20 C.F.R. § 404.1527(d).

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

---

[8] Medical opinions are statements from physicians that reflect judgments about the nature and severity of the claimant's impairment, including symptoms, diagnosis, prognosis, and what the claimant can still do despite the impairment. 20 C.F.R. § 404.1527(a)(2).

[9] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. See 20 C.F.R. § 404.1502.

-8-

Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records.  Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).  The ALJ must "state with particularity the weight he [or she] gave the different medical opinions and the reasons therefor."  Sharfarz v. Bowen, 825 F.2d 278, 279-80 (11th Cir. 1987); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (finding no reversible error when "the ALJ articulated specific reasons for failing to give [a treating physician] controlling weight," and those reasons were supported by substantial evidence); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997) (explaining that if an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it).

Here, the ALJ found "good cause to reject Dr. Kilgore's opinions regarding [Plaintiff]'s ability to perform work-related activities as being inconsistent with and neither bolstered nor supported by the record evidence in its entirety." Tr. at 304 (citing Phillips, 357 F.3d at 1240-41).  The ALJ articulated the following reasons for rejecting Dr. Kilgore's opinion:

> The undersigned [ALJ] finds Dr. Kilgore's 2004 and 2005 opinions to be inconsistent with the overall record evidence and his own treatment records. For example, the undersigned notes that on the same day in February 2004 that Dr. Kilgore indicated [Plaintiff] was restricted from any bending, stooping, pushing/pulling and performing overhead work, he also observed that [Plaintiff] had normal reflexes, motor strength, motor tone and gait/station upon

> examination and reported no restrictions in [Plaintiff]'s ability to sit or carry[.[10]] While he indicated a decreased range of cervical and lumbar spine motion due to paraspinal muscle sapsms on April 10, 2004, he also reported [Plaintiff] had normal sensory, motor and reflex examinations and normal grip strength and fine coordination[.[11]] When [Plaintiff] returned to Dr. Kilgore more than a year later, on May 9, 2005, he reported his headaches and neck and back pain precluded any degree of physical activity[;[12]] however, Dr. Kilgore found [Plaintiff]'s motor strength, motor tone, reflexes, gait and station were all normal upon clinical examination[.[13]] He noted [Plaintiff] was "capable of light duty," but again marked "no work" with an "x[."[14]] Moreover, he attributed [Plaintiff]'s inability to work on May 23, 2005 to headaches and not due to cervical or lumbar deficits or pain. The undersigned [ALJ] notes that brain imaging studies have not revealed any abnormalities, [Plaintiff]'s neurological examinations have routinely been relatively normal and treatment records show [Plaintiff]'s headaches were responsive to medication when taken as prescribed.

Tr. at 304.

The ALJ articulated adequate reasons supported by substantial evidence showing good cause for discounting Dr. Kilgore's opinion. As the ALJ correctly observed, Dr. Kilgore's treatment notes from February 19, 2004 reflect normal reflexes, motor strength, motor tone and gait/station, Tr. at 146, and treatment notes from April 10, 2004 indicate sensory, motor, and reflex exams were normal, and Plaintiff's grip strength and fine coordination were "ok," Tr. at 145. Also on February 19, 2004, it is indicated that Plaintiff is "seeking disability" and "filed for disability." Tr. at 146, 189.

---

[10] Citing Tr. at 146.

[11] Citing Tr. at 145.

[12] Citing Tr. at 187.

[13] Although the ALJ cites Tr. at 187, this evidence is actually found at Tr. at 188.

[14] Citing Tr. at 188.

In addition, examination on August 25, 2003 revealed "a normal pattern of gait," "no segmental weakness," "[h]eel and toe walk were intact," and "[u]pper extremity strength was equal at 5/5." Tr. at 195. "Cerebellar testing revealed no dysmetria or ataxia." Tr. at 196. At the conclusion of the August 25, 2003 examination, Dr. Kilgore ordered MRIs. Tr. at 196. The MRIs were taken on September 3, 2003. Tr. at 184-86. Importantly, as the ALJ indicated, Tr. at 300, the MRI of Plaintiff's brain was normal. Tr. at 186. The MRI of Plaintiff's thoracic spine revealed "minimal rotoscoliosis" and "no acute bone deformity." Tr. at 184 (capitalization omitted). The MRI of Plaintiff's cervical spine revealed "straightening of the upper cervical spine with loss of the normal cervical lordotic curvature," and "minimal hypertrophic change at C5." Tr. at 185 (capitalization omitted). Furthermore, on November 3, 2003, Plaintiff reported to Dr. Kilgore that his headaches were "fairly controlled" on medication. Tr. at 205.

Challenging the ALJ's reasons for discounting Dr. Kilgore's opinions, Plaintiff relies on treatment notes from May 9, 2005, February 19, 2004, August 25, 2003. Pl.'s Mem. at 7-8. It is clear the ALJ was aware of these treatment notes because he specifically referred to them[15] when he reviewed Dr. Kilgore's treatment notes and the other medical evidence. Tr. at 293-303. The ALJ's review of this evidence is thorough and detailed. Nevertheless, Plaintiff's arguments are addressed below.

With respect to the May 9, 2005 treatment notes, Plaintiff emphasizes that Dr. Kilgore indicated "light duty," not "light work." Pl.'s Mem. at 7. Although "light duty" may not equate

---

[15] The ALJ specifically referred to Dr. Kilgore's May 9, 2005, February 19, 2004, August 25, 2003 treatment notes at Tr. 298-99.

-11-

to "light work," the notation of "light duty" in the May 9, 2005 treatment notes is inconsistent with Dr. Kilgore's opinion that Plaintiff is "totally incapacitated from working approximately 8-10 days per month." Tr. at 209. In addition, Plaintiff points to treatment notes from February 19, 2004,[16] which note disc bulges and indicate "no work." Pl.'s Mem. at 7-8 (citing Tr. at 189-90) (capitalization omitted). However, as noted earlier, "part time" is also circled in the treatment notes from February 19, 2004. Tr. at 190 (capitalization omitted). As to the treatment notes from August 25, 2003, the portion of the treatment notes to which Plaintiff refers appears to be a recording of Plaintiff's subjective complaints rather than objective medical findings. See Pl.'s Mem. at 8 (referring to Tr. at 194).

Even assuming the treatment notes Plaintiff identifies arguably provide some support for a finding a disability, they are insufficient to render the ALJ's Decision unsupported by substantial evidence. Under the controlling standard of review, the ALJ's decision must be affirmed if supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford, 363 F.3d at 1158-59. The ALJ's Decision is sufficiently supported here.

For the foregoing reasons, the undersigned finds that the ALJ articulated adequate reasons showing good cause for discounting the opinion of Dr. Kilgore. After a thorough review of the entire record, the ALJ's decision to discount Dr. Kilgore's opinion is supported by substantial evidence.[17]

---

[16] Plaintiff mistakenly stated that these treatment notes are dated February 9, 2004. See Pl.'s Mem. at 7.

[17] Plaintiff asserts that, if the Court finds good cause for discounting Dr. Kilgore's opinion, the Court would be "implicitly finding that Dr. Kilgore was over prescribing narcotics to Plaintiff[.]" Pl.'s Mem. at 9. No such
(continued...)

### B. Hypothetical to VE

Plaintiff contends the ALJ "failed to ask hypothetical questions that included all of [Plaintiff]'s severe impairments which are documented by the evidence of record." Pl.'s Mem. at 10. "Specifically, [Plaintiff argues the ALJ] failed to address [Plaintiff]'s post accident headaches in any of his hypothetical[s] to the [VE]." Id.

"In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999). The hypothetical to the VE is typically based in part on the ALJ's RFC determination. In determining a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also 20 C.F.R. § 404.1545(a)(2); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)); Hudson v. Heckler, 755 F.2d 781, 785 (11th Cir. 1985) (stating that, "[w]here a claimant has alleged a multitude of impairments, a claim . . . may lie even though none of the impairments, considered individually, is disabling") (internal quotation and citation omitted). Nevertheless, an ALJ is not required to include findings in the hypothetical that are properly rejected as unsupported by the evidence. Crawford, 363 F.3d at 1161.

---

[17](...continued)
implication is intended. The question before the Court is not whether Dr. Kilgore was properly prescribing narcotic medication; rather, the question is whether the ALJ's Decision is supported by substantial evidence. For the reasons explained herein, it is.

Here, Plaintiff is essentially arguing that he is experiencing disabling pain as a result of his headaches that should have been included in the hypothetical to the VE. The Eleventh Circuit has established a framework for analyzing a claimant's allegations of pain and other subjective symptoms. "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). If it is determined that a claimant has a medical condition that could reasonably give rise to the subjective symptoms alleged, "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995).

Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony. Wilson, 284 F.3d at 1225; see also Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). When evaluating a claimant's subjective symptoms, the relevant factors include the following:  (1) the claimant's daily activities; (2) the location,

duration, frequency, and intensity of the pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medication; (5) treatment, other than medication; (6) measures used to alleviate pain or other symptoms; and (7) the claimant's functional limitations.  20 C.F.R. §§ 404.1529(c), 416.929(c); see also Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished).

Here, the ALJ found Plaintiff's headaches to be a severe impairment, and Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." Tr. at 293, 297.  However, the ALJ also found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [RFC]." Tr. at 297.  The ALJ based his credibility determination on the "objective medical findings, degree of medical treatment received or required and discrepancies between [Plaintiff]'s assertions, other documentary evidence, and the reports and findings of treating, examining, and non-examining sources." Tr. at 302.

A review of the ALJ's Decision reveals the ALJ properly discredited Plaintiff's complaints of pain.  As the ALJ pointed out, Plaintiff has not been hospitalized for headaches, and imaging studies of Plaintiff's head have been normal. Tr. at 302.  A review of the record reveals that these reasons are supported by substantial evidence. See Tr. at 137, 186.  Moreover, the ALJ noted Plaintiff "reported relief when he took medication." Tr. at 302.  This observation is supported by the record. Tr. at 205 (stating that Plaintiff's headaches were "fairly controlled" with medication). Although there was some testimony that Plaintiff was unable to afford medical care, Plaintiff testified during the January 21, 2009

hearing that he was "taking pain medication" at that time. Tr. at 718.[18] Additionally, for the reasons articulated supra pp. 6-12, the ALJ articulated adequate reasons supported by substantial evidence establishing good cause to discount Dr. Kilgore's opinion that Plaintiff "is totally incapacitated from working approximately 8-10 days per month" due to headaches. Tr. at 209. Notably, there is evidence from multiple sources suggesting an exaggeration of symptoms and, perhaps, malingering. Tr. at 483-84, 488, 544-45, 691-94.

Nevertheless, Plaintiff argued strongly during the August 11, 2010 oral argument that a Minnesota Multiphasic Personality Inventory-2 ("MMPI-2") conducted June 14, 2008 constitutes objective evidence supporting Plaintiff's complaints of pain and supports the conclusion that Plaintiff suffers from a somatization disorder. Plaintiff emphasizes that the results from the MMPI-2 confirm the validity of Plaintiff's pain, and the ALJ practically ignored the results from the MMPI-2.

The MMPI-2 was administered by Raymond Schoenrock, Ph.D., who evaluated Plaintiff on June 14, 2008 and issued a Psychological Report on June 20, 2008. Tr. at 543, 546. The ALJ did not specifically refer to the MMPI-2, but he did discuss the Psychological Report of Dr. Schoenrock. Tr. at 301. Thus, the ALJ had to have been aware of the results of the MMPI-2 because they were included in the Dr. Schoenrock's Psychological Report. Tr. at 545. In addition, the results from the MMPI-2 were discussed during the January 21, 2009 hearing. Tr. at 701-08. Thus, the ALJ did not broadly reject this evidence in a manner that frustrates judicial review. See Dyer, 395 F.3d at 1211 (stating that "there is no rigid

---

[18] When asked how he was able to obtain the medication, Plaintiff responded that he did not know, and his wife "handles it all." Tr. at 718-19.

requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [a reviewing court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole") (internal quotation omitted).

Dr. Schoenrock, who conducted the MMPI-2, did not reach the disability conclusion urged by Plaintiff during the August 11, 2010 oral argument. Dr. Schoenrock diagnosed Plaintiff with a "pain disorder associated with both psychological factors and a general medical condition." Tr. at 545. Dr. Schoenrock observed that Plaintiff "had an unusually high score on Scale 1, Hypochondriasis, which is usually obtained by individuals making use of somatization as one of their defenses," and which "involves the channeling of anger and other unacceptable impulses into the expression of various somatic complaints." Tr. at 545. Dr. Schoenrock explained that the high Scale 1 score indicates "the presence of a strong psychological component." Tr. at 545. Dr. Schoenrock stated, "If [Plaintiff's] current presentation is taken at face value, he does appear compromised in his capacities for sustained concentration and persistence, social interaction, and adaptation"; however, in Dr. Schoenrock's opinion, Plaintiff "made some attempt to exaggerate his symptomatology and some of his cognitive limitations." Tr. at 545 (emphasis added). Dr. Schoenrock did not state that Plaintiff is incapable of substantial gainful activity, much less that he is totally incapacitated approximately eight to ten times per month.

A review of the record reveals that Plaintiff has never received treatment for the somatization disorder that he is now asserting as the basis for his disability claim, and the evidence from other examining physicians does not provide support for such a disorder. In

-17-

a General Clinical Examination with Mental Status dated July 20, 2004, Andres Nazario, Jr., Ph.D. makes no mention of a somatization disorder; in fact, Dr. Nazario stated Plaintiff "does not appear to suffering from any mental or psychological disorder . . . ." Tr. at 168.  Nor is there any indication of a somatization disorder in the report of Linda Abeles, Ph.D., who on March 3, 2006 conducted a general clinical evaluation with mental status.  Tr. at 482.  Rather than suggesting a somataform disorder, Dr. Abeles observed that Plaintiff "seemed to exhibit exaggerated pain behaviors," "[h]is overall presentation was suggestive of exaggeration if not malingering," and "[r]esults from the interview and mental status examination were strongly suggestive of malingering."  Tr. at 483.

After thoroughly reviewing the entire record, substantial evidence supports the limitations included in the hypothetical posed to the VE by the ALJ.  The ALJ was not required to include limitations in the hypothetical that are not supported by the evidence.  See Crawford, 363 F.3d at 1161.

## V. Conclusion

A thorough review of the entire record reveals that the Commissioner's final decision is supported by substantial evidence.  For the reasons explained herein, it is

**ORDERED:**

1.      The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), as incorporated by 42 U.S.C. § 1383(c)(3), **AFFIRMING** the Commissioner's final decision.

      2.     The Clerk is directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 2, 2010.

                                                                                 */s/ James R. Klindt*
                                                                            JAMES R. KLINDT
                                                                     United States Magistrate Judge

jdf
Copies to:
Counsel of Record